IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MAY 1997 SESSION



FILED

January 12, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellee, | ) | No. 03C01-9610-CR-00387 |
| | ) | |
| | ) | Hawkins County |
| v. | ) | |
| | ) | Honorable |
| | ) | |
| WILLIAM JAMES LOGAN, | ) | (Possession of cocaine with intent to |
| | ) | sell and tampering with evidence) |
| Appellant. | ) | |

For the Appellant:

Heiskell Winstead
205 Highway 66 South
Rogersville, TN 37857

For the Appellee:

John Knox Walkup
Attorney General of Tennessee
        and
Peter M. Coughlan
Assistant Attorney General of Tennessee
450 James Robertson Parkway
Nashville, TN 37243-0493

C. Berkeley Bell, Jr.
District Attorney General
113J W. Church Street
Greeneville, TN 37743
        and
Douglas Godbee
Assistant District Attorney General
Hawkins County Courthouse
Rogersville, TN 37857

OPINION FILED:_____

AFFIRMED

Joseph M. Tipton
Judge

**O P I N I O N**

The defendant, William James Logan, appeals as of right from his convictions by a jury in the Criminal Court for Hawkins County for possession of less than .5 grams of cocaine with the intent to sell and tampering with evidence, both Class C felonies. As a Range I, standard offender, the defendant received concurrent six-year sentences. He contends that there is insufficient evidence to support his convictions. We affirm the judgment of the trial court.

Detective Dan Quillen of the Kingsport Police Department testified that he and four other officers executed a search warrant on the defendant's residence at around 8:00 a.m. on April 12, 1996. He said that officers knocked on the back door of the home and that for over a minute, there was no answer. He said that eventually he heard a man and a woman's voice from inside the house yell, "just a minute." Detective Quillen said that a woman answered the door and that Sergeant Anderson announced that the officers were from the police department and had a search warrant.

Detective Quillen said that officers found the defendant sitting on a toilet in a bathroom. The officers asked the defendant to get off of the toilet, and the defendant refused and told them to let him finish using the bathroom. Detective Quillen said that the officers removed the defendant from the toilet and found sixteen small zip-lock bags containing white powder. Detective Quillen testified that all of the bags had a white powder in them and that there was also a larger zip-lock bag floating in the toilet. Officer Quillen said that while the defendant was being handcuffed, the defendant admitted that all of the cocaine in the toilet was his. Officer Quillen said that he went outside and retrieved his camera. He took two photographs of the white powder in the zip-lock bags before removing it from the toilet.

2

Detective Quillen also testified that officers recovered money from a bedroom in the house. He explained that $2,400.00 was found in a shoe in the closet of the bedroom, $330.00 was found on top of a television, and $94.00 was found in a vase in the bedroom. Pictures of the money and the toilet containing plastic bags of white powder were introduced into evidence along with the money, plastic bags, and white powder.

On cross-examination, Detective Quillen admitted that the defendant told him that the cocaine was for his own personal use because he was a cocaine addict. Although officers did not find any drug paraphernalia for ingesting cocaine, they also did not find any small zip-lock bags other than those that were found in the toilet.

David Holloway, a forensic chemist with the Tennessee Bureau of Investigation, testified that he determined that the powder that was in the zip-lock bags contained cocaine. He explained that it was difficult to determine the weight of the powder because the powder was very wet when he received it. After the powder dried, he determined that it weighed .11 grams. Agent Holloway said that several of the plastic bags did not have any powder in them but that approximately four of the bags did.

Sergeant Wayne Anderson testified that he and his drug dog, Ike, helped search the defendant's residence. Sergeant Anderson said that he yelled, "search warrant" very loudly when the defendant's wife answered the door to the house. He said that he found the defendant sitting on the toilet and ordered the defendant to show his hands. Sergeant Anderson said that the defendant loudly grunted twice and then reached toward the handle on the back of the toilet. As the defendant was reaching toward the handle, Sergeant Anderson grabbed him by his right shoulder and pulled him off of the toilet. Sergeant Anderson said that the defendant never flushed the toilet.

3

Sergeant Anderson explained that his drug dog, Ike, is trained to find drugs and money that has been in or around drugs. He said that he took Ike into a bedroom in the house and that Ike ran around the room and quickly ran over to a large vase that had money in it and a lamp on top of it. Sergeant Anderson said that Ike knocked the lamp off of the vase before he could get Ike stopped. Sergeant Anderson said that the dog went into the closet and tried to push a pair of shoes across the closet floor. He said that he pulled the dog out of the closet and told other officers that the dog alerted that there was something in the corner of the closet. Sergeant Anderson explained that the dog also tried to stand up near the television. He said that the dog tried to get his nose under the tongue of a shoe that was neatly placed against the wall of the room and that the dog alerted that something was near the dryer in the house but that nothing was found in those places.

Detective David Street of the Kingsport Police Department testified that he followed Sergeant Anderson and Ike as they searched the defendant's residence. He said that he recovered $94.00 out of a vase in the bedroom, $2,400.00 from a shoe in the bedroom closet and $400.00 under a box on the television. Detective Street also testified that he found papers relating to the defendant's social security disability benefits and Eyvelda Logan's approved application for Aid to Families with Dependent Children (AFDC). The AFDC application shows no monthly income and no accountable resources. Detective Street also found a check stub that indicated that Eyvelda Logan received public assistance. Detective Street identified various receipts he found in the home, some of which show that the defendant paid cash for items and services.

Deborah Hale, a friend of the defendant's, testified that she shared a checking account with the defendant and received his social security checks. She explained that the defendant had to have a named representative payee due to his drug

4

addiction. She said that the defendant used some of the money in the account to buy and sell automobiles. Ms. Hale said that in January 1996 she withdrew $2,000.00 from the account and gave it to the defendant because he was going to buy a car. Ms. Hale said that she never saw the defendant buy or sell cocaine.

I

First, the defendant contends that the state failed to prove beyond a reasonable doubt that he had an intent to sell the cocaine. The defendant argues that, at most, the proof at trial established that he possessed the cocaine for his own personal use.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). This means that we may not reweigh the evidence, but must presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

When viewed in this light, the evidence shows that the defendant possessed several small bags of cocaine. Although the defendant was not working because he was disabled and the woman living with him reported to AFDC that she had no income, police found over $2,800.00 in the defendant's residence. A dog trained to detect traces of drugs on money alerted police to three different places where the money was located. Under these circumstances, the jury was justified in concluding that the defendant possessed the cocaine with the intent to sell it.

5

## II

Next, the defendant contends that there is insufficient evidence to support his conviction for tampering with evidence because the state failed to prove that he knew that an investigation was pending against him and failed to prove that he tried to alter or destroy evidence. The defendant asserts that because he did not flush the toilet, he did not take any steps to alter or destroy the cocaine found in the bags in the toilet. In support of his argument, he cites State v. Patton, 898 S.W.2d 732 (Tenn. Crim. App. 1994), in which this court held that mere abandonment of evidence does not constitute evidence tampering within the meaning of T.C.A. § 39-16-503.

Under T.C.A. § 39-16-503, the offense of tampering with evidence is defined as follows:

> (a) It is unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to:
>
> (1) Alter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding . . . .

The indictment in this case charges the defendant with knowingly destroying cocaine with the intent to impair the investigation that he knew was in progress.

Initially, we agree with the defendant that mere abandonment of evidence does not amount to tampering under the statute. The defendant in Patton was charged with throwing down a bag of marijuana while he was fleeing from law enforcement officers. This court affirmed the trial court's dismissal of the indictment, concluding that mere abandonment of evidence does not amount to tampering under the statute.

Unlike Patton, though, the defendant in the present case did not merely abandon the cocaine. The defendant altered the cocaine by throwing it into water and then concealed the cocaine by sitting on the toilet. However, we are mindful that the defendant was not charged with altering or concealing the cocaine. The indictment

6

alleges that he tampered with evidence by destroying the cocaine. Thus, we must determine whether the state proved that the defendant "destroyed" cocaine.

As a starting point, we note that the term "destroy" is neither defined in the criminal code nor in the case law interpreting T.C.A. § 39-16-503. However, we recognize that the provisions of the criminal code are to be construed by the fair import of their terms. See T.C.A. § 39-11-104. This includes relying upon the natural and ordinary meaning of the language used. See, e.g., State v. Williams, 690 S.W.2d 517, 529 (Tenn. 1985). "Destroy" is a verb that means to ruin or to put out of existence. See Merriam Webster's Collegiate Dictionary 314 (10th ed. 1996); American Heritage Dictionary 196 (1975). For something to be destroyed within the context of T.C.A. § 39-16-503, its evidentiary value must be ruined. See Spector v. State, 746 S.W.2d 945 (Tex. Ct. App. 1988) (interpreting "destroy" in a similar statute).

When viewed in the light most favorable to the state, the evidence sufficiently establishes that the defendant destroyed cocaine while he knew that an investigation was in progress. The proof shows that the officers knocked on the defendant's door several times. The officers eventually heard the defendant and a lady yell, "just a minute." Once the lady answered the door, Sergeant Anderson notified the defendant that an investigation was in progress by loudly yelling, "search warrant." The officers found the defendant sitting on a toilet that had sixteen small zip-lock bags in it. Detective Quillen testified that each of the bags contained white powder. The photographs in evidence corroborate this testimony. The defendant admitted to the police that the cocaine in the toilet was his.

Detective Quillen testified that he removed the bags and placed them into an evidence bag. The defendant stipulated to the chain of custody of the zip-lock bags. However, Agent Holloway testified that only four of the bags contained a white powder

7

when he received them.  From this proof, the jury was justified in concluding that the defendant successfully destroyed the contents of twelve of the bags by placing them in the toilet.  That is, the evidentiary value of the contents of those bags was destroyed.

In consideration of the foregoing and the record as a whole, the defendant's convictions for possession of cocaine with the intent to sell it and tampering with evidence are affirmed.

_____Joseph M. Tipton, Judge

CONCUR:


_____
Joe B. Jones, Presiding Judge


_____
Curwood Witt, Judge