# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 7, 2008 Session

## STATE OF TENNESSEE v. CURTIS LEE MAJORS

**Appeal from the Criminal Court for Davidson County**
**No. 2006-D-3084    Cheryl A. Blackburn, Judge**

---

**No. M2007-01911-CCA-R3-CD - Filed May 21, 2009**

---

The Davidson County Grand Jury indicted the defendant, Curtis Lee Majors, on one count of possession with intent to sell or deliver less than 0.5 grams of cocaine within 1000 feet of a school, a Class B felony, and one count of tampering with evidence, a Class C felony. After a jury trial, the defendant was convicted of the lesser included offense of misdemeanor possession of cocaine, a Class A misdemeanor.[1] The jury also convicted the defendant of evidence tampering as charged in Count 2 of the indictment. The trial court sentenced the defendant to fifteen years in the Department of Correction as a Range III, persistent offender. On appeal, the defendant contends that: (1) the evidence was insufficient to sustain his conviction for tampering with evidence; (2) the trial court gave an erroneous jury instruction regarding tampering with evidence; and (3) the trial court refused to apply one of the mitigating factors proposed by the defendant at his sentencing hearing. After reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined. JAMES CURWOOD WITT, JR., J., filed a dissenting opinion.

J. David Wicker, Jr., Nashville, Tennessee, for the appellant, Curtis Lee Majors.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Robert E. McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]The trial court sentenced the defendant to eleven months and twenty-nine days, with the sentence to be served concurrently with the sentence resulting from the evidence tampering conviction. The defendant does not challenge the misdemeanor conviction or length of sentence on appeal.

**OPINION**

On the evening of October 12, 2005, seven officers with the Metropolitan Nashville Police Department executed a search warrant for an apartment at 621 Charles E. Davis Boulevard in Nashville. Officer William Traughber testified that he was the first of the officers to enter the apartment. He noted that all of the officers at the apartment that evening were wearing "raid vests" that were emblazoned with the department's logo, the officer's badge, and the word "police." He said that as the officers approached the apartment, the door opened and a man exited through the door. Officer Traughber arrested this person, and as he did, he looked up the stairs and saw the defendant sitting at a table in the apartment's kitchen. He said that as he was detaining the person at the front door, he looked up the stairs and saw the defendant run from the kitchen table and disappear from view. Officer Traughber testified that he and the other officers executing the search warrant yelled out "police" and "search warrant" upon entering the apartment, although he gave inconsistent testimony as to whether he arrested the man at the front door before or after the police announced their presence. However, he insisted that the defendant "absolutely saw us and heard us scream police" before his arrest.

Officer Traughber said that after the defendant disappeared from his view, he heard a toilet flush; when asked to elaborate on the amount of time that elapsed between the defendant's disappearance and the toilet flushing, the officer said that the two events were "instantaneous." He said that two officers, Ron Black and Tim Szymanski, arrested the defendant in the apartment's bathroom, which he surmised was fifteen to twenty feet from the kitchen. Officer Traughber said that he arrived in the bathroom about the time the other two officers arrested the defendant. As Officer Traughber arrived in the bathroom, the commode's tank "was still filling up where it had just been flushed," and "water [was] splattered on the seat." He noted that the defendant's clothes were still on.

Officer Traughber said that in the kitchen, he found digital scales and a white powder that field tested as cocaine. The officer collected this evidence, which was sent to the Tennessee Bureau of Investigation (TBI) crime lab for additional testing.[2] After Officer Traughber advised the defendant of his Miranda rights and the defendant waived those rights, the defendant admitted that the cocaine found on the kitchen table was his and that he regularly snorted cocaine. Officer Traughber said that given his experience with suspects attempting to flush narcotics down the toilet, he asked the defendant "what did he flush." The defendant did not answer the officer's question; instead, Officer Traughber said that "[the defendant] said: I snort. Repeatedly. He was referring to the powder cocaine, I guess, on the kitchen table."

---

[2] TBI Agent John Scott testified that the white powder collected from the kitchen table was 0.04 grams of cocaine.

On cross-examination, Officer Traughber said that he did not find any cocaine residue or drug paraphernalia inside or around the toilet. He also said that no drugs or drug paraphernalia were found on the defendant's person. He acknowledged that no attempt was made "to see if . . . any type of evidence" had gotten "lodged" in the toilet. Furthermore, the officer acknowledged that at the preliminary hearing in this case, he had testified that he did not see the defendant sitting at the kitchen table before his arrest.

Metropolitan Nashville Police Officer Ron Black testified that after he entered the apartment, he heard a "commotion," so he went upstairs. Once Officer Black arrived upstairs, he found the defendant "[j]ust coming out" of the bathroom by himself. He said that the door to the bathroom was open when he arrived. He said that the toilet "just got done flush[ing], water was still spraying," and the defendant was not in any "state of undress." Officer Black acknowledged that he did not see the defendant until he arrested him in the bathroom and that the defendant said nothing to him. On cross-examination, Officer Black acknowledged that he did not find any drugs or drug paraphernalia in or on the toilet or elsewhere in the restroom. He also acknowledged that he did not search the defendant after his arrest and that before his arrest, he only focused on whether the defendant was carrying a weapon, which he was not.

Metropolitan Nashville Police Lieutenant William Mackall, who was accepted as an expert in narcotics investigations, also testified that in his experience, suspects in narcotics investigations sometimes attempt to flush narcotics down the toilet in an attempt to destroy evidence. He said that in his experience, he was never able to recover powder cocaine from a toilet because the cocaine would dissolve when introduced to water. The only way the police would be able to recover cocaine were if it had "been left on the rim of the toilet seat."

The jury convicted the defendant of misdemeanor cocaine possession, a lesser included offense of the indicted offense of possession with intent to sell or deliver less than 0.5 grams of cocaine within 1000 feet of a school. The jury also convicted the defendant of tampering with evidence as charged in the indictment. The defendant subsequently filed a timely notice of appeal.

ANALYSIS

Sufficiency of Evidence

The defendant first contends that the evidence produced at trial was insufficient to sustain his conviction for tampering with evidence. An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The appellate court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. State v.

Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). A conviction may be sustained solely upon circumstantial evidence, but in such instances the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005) (quoting State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610, 612 (1971)).

As relevant to this case, Tennessee law states that it is "unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to . . . [a]lter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding . . . ." Tenn. Code Ann. § 39-16-503(a)(1) (2006). The defendant argues both that he was unaware that an investigation or official proceeding was in progress and that the proof did not establish beyond a reasonable doubt that he altered, destroyed, or concealed any "thing."

The defendant's assertion that he was unaware of a "pending or in progress" investigation is based upon his contention that the police violated the "knock and announce" rule in entering the apartment. This court has noted that the rule, established in common law and examined in great detail by the United States Supreme Court, requires that "a law enforcement officer who is charged with the execution of a search warrant must give: (1) notice of his authority; and (2) the purpose of his presence at the structure to be searched." State v. Perry, 178 S.W.3d 739, 745 (Tenn. Crim. App. 2005) (citations omitted). The Supreme Court has held that the knock and announce rule is a factor to consider in determining the reasonableness of a search or seizure under the Fourth Amendment. Wilson v. Arkansas, 514 U.S. 927, 934 (1995). Exceptions to the rule exist, such as instances in which the police would be threatened with physical violence, instances where there is reason to believe that evidence would likely be destroyed, or where knocking and announcing would be "futile." Hudson v. Michigan, 547 U.S. 586, 589-90 (2006) (citations omitted).

The defendant's reliance on the knock and announce rule is unavailing to him. In most instances, especially post-Wilson, the rule is cited when arguing that evidence was seized in contravention of the Fourth Amendment. In this case, the defendant did not file a Fourth Amendment-based motion to suppress evidence based upon a violation of the knock and announce rule. Furthermore, several federal circuit courts have held that police entry through an open door does not violate the knock and announce rule. See United States v. Williams, 351 F.2d 475, 477 (6th Cir. 1962); see also United States v. Remigio, 767 F.2d 730, 732-33 (10th Cir. 1985) (reaching same conclusion; cites to Williams and cases from five other federal circuits in support of conclusion). Irrespective of the knock and announce issue, the evidence established that the officers who entered the apartment were wearing vests that identified them as police officers, the defendant saw the police before running from the kitchen, and the officers yelled out "police" and "search warrant" before they pursued and arrested the defendant. We therefore conclude that the defendant was aware of an investigation or proceeding against him for purposes of the evidence tampering statute.

4

In addressing the "alter, destroy or conceal" element of the offense, we first note that this court has affirmed a defendant's evidence tampering conviction based upon a defendant's flushing drugs down a toilet where none of the testifying witnesses saw the defendant place drugs in the toilet. See State v. Logan, 973 S.W.2d 279, 282 (Tenn. Crim. App. 1998). However, as the defendant notes in his brief, the facts of the present case can be distinguished from those of Logan. In Logan, police officers found the defendant sitting on a toilet; after the defendant was removed from the toilet, the police found "sixteen small [plastic] bags containing white powder" inside the toilet. Id. at 280. The police also found a "larger [plastic] bag floating in the toilet." Id. Furthermore, "while the defendant was being handcuffed, the defendant admitted that all of the cocaine in the toilet was his." Id. In this case, Officers Traughber and Black did not find any cocaine or drug paraphernalia in or around the toilet or elsewhere in the restroom. The police did not find any drugs or drug paraphernalia on the defendant's person, and the officers did not testify that they saw the defendant carrying drugs or drug paraphernalia from the kitchen to the restroom. Additionally, the defendant did not admit to placing any drugs or drug paraphernalia inside the toilet; when asked if he put anything inside the toilet, the defendant replied only that he snorted cocaine.

Despite the differences between the instant case and Logan, we still conclude that the evidence produced at trial supported the jury's finding that the defendant altered or destroyed evidence. Officer Traughber testified that when the officers entered the apartment, the defendant quickly got up from the kitchen table, at which powder cocaine was found, and ran from view. Officer Traughber said that he then heard a toilet flush, an event which was "instantaneous" with the defendant's disappearing from view. Officer Black testified that he arrested the defendant as he was exiting the bathroom; he said that as he arrived at the bathroom, the toilet had just finished flushing. Both officers testified that the defendant was not in any state of undress and that the toilet seat was covered with water. While Officer Traughber said that he did not reach the bathroom until after the defendant had been arrested, he said that the toilet's tank was still filling with water when he arrived, which further supports the conclusion that very little time passed between the defendant's running from the kitchen table and his arrest. While the officers were unable to find any cocaine residue on or in the toilet, Lieutenant Mackall testified that this occurrence was common, given that powder cocaine dissolves in water. Furthermore, when Officer Traughber asked the defendant what he flushed down the toilet, the defendant did not tell the officers that he was using the restroom when the officers found him; rather, he repeatedly told the officers, "I snort." While the evidence of the defendant's guilt was entirely circumstantial, we conclude that the entirety of the evidence was so cogent as to exclude every reasonable theory other than the one the jury adopted through its guilty verdict—that the defendant altered or destroyed cocaine by flushing it down the toilet. The defendant is therefore denied relief on this issue.

Jury Instructions

The trial court instructed the jury on the offense of tampering with evidence as follows:

> For you to find the defendant guilty of this offense the State must have proven beyond a reasonable doubt the existence of the following essential elements: (1) that the defendant knew an investigation or official proceeding was pending or in progress

5

and (2) that the defendant altered, destroyed, or concealed any record with intent to impair its viredity [sic], legibility, or availability as evidence in the investigation or official proceeding. And it also needs to be record or any thing. It should be thing. And I think it's also any document. I'm going to change this.

The defendant argues that the trial court's jury instruction incorrectly stated the law because "[i]t did not denote a [specific] 'record, document, or thing' as dictated by" the corresponding Pattern Jury Instruction, and because the language of the jury instruction "did not reflect the language as submitted by the [S]tate in the indictment." The defendant also argues that the trial court "did not identify which portion of the charge it intended to correct and a corrected version of the jury charge was never read into the record." The State argues that the trial court's jury instruction provided the jury with a complete and accurate charge of the law as related to Count 2 of the indictment. We agree with the State.

In criminal cases, a defendant has the right to a correct and complete charge of the law. State v. Garrison, 40 S.W.3d 426, 432 (Tenn. 2000). The material elements of the charged offense should be described and defined in connection with that offense. State v. Ducker, 27 S.W.3d 889, 899 (Tenn. 2000); State v. Cravens, 764 S.W.2d 754, 756 (Tenn. 1989). The failure to do so deprives the defendant of the constitutional right to a jury trial and subjects the erroneous jury instruction to harmless error analysis. Garrison, 40 S.W.3d at 433-34. A jury instruction, however, must be reviewed in its entirety and read as a whole rather than in isolation. State v. Leach, 148 S.W.3d 42, 58 (Tenn. 2004). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Faulkner, 154 S.W.3d 48, 58 (Tenn. 2005) (citing State v. Vann, 976 S.W.2d 93, 101 (Tenn. 1998)).

In this case, the jury instructions provided by the trial court essentially restated the statutory language of Tennessee Code Annotated section 39-16-503,which provides that it is "unlawful for any person, knowing that an investigation or official proceeding is pending or in progress, to . . . [a]lter, destroy, or conceal any record, document or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding . . . ." While the defendant correctly states that Tennessee Pattern Jury Instruction (Criminal) 26.03 "provides that the term 'record, document, or thing' is to be altered based upon the charge and/or evidence before the [c]ourt," and that the pattern instructions provide for the record, document, or thing to be specifically identified, our supreme court has stated that "[t]here is no requirement limiting a trial court to the use of 'pattern instructions.'" State v. West, 844 S.W.2d 144, 151 (Tenn. 1992). The trial court's instruction correctly instructed the jury as to the essential elements of tampering with evidence, and based on the instruction the jury could have reasonably determined exactly what constituted a "record, document, or thing" for purposes of the offense.

Furthermore, the defendant's contention that the jury instruction did not comport with the language of the indictment is without merit. Count 2 of the indictment, which charged the defendant with tampering with evidence, alleged that the defendant, "knowing that an investigation or official proceeding was pending, or in progress, did intentionally or knowingly alter, destroy, or conceal any

6

record, document, or thing with intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding . . . ." The trial court's amended instruction essentially restated the language of the indictment. Accordingly, the defendant is denied relief on this issue.

## Sentencing

At the defendant's sentencing hearing, the trial court imposed two sentencing enhancement factors: "The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range", and that the defendant was released on parole at the time he committed these offenses. Tenn. Code Ann. § 40-35-114(1), (13)(B) (2006). The trial court applied one mitigating factor: "The defendant's criminal conduct neither caused nor threatened serious bodily injury." Id. § 40-35-113(1). The trial court gave "very great weight" to the enhancement factors but did not address the amount of weight it gave to the mitigating factor. The trial court sentenced him to fifteen years for the evidence tampering conviction, the maximum term for a defendant convicted of a Class C felony as a Range III offender. See Id. § 40-35-112(c)(3) (sentence range of ten to fifteen years). On appeal, the defendant argues that the trial court erred by giving no weight to the mitigating factor and by not explaining why it weighed the mitigating factor as it did.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

[T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994) (citation omitted); see Tenn. Code Ann. § 40-35-210(e).

Tennessee's sentencing act provides:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Id. § (d)-(f); State v. Carter, 254 S.W.3d 335, 342-43 (Tenn. 2008). "An appellate court is therefore bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. Accordingly, on appeal we may only review whether the enhancement and mitigating factors were supported by the record and their application was not otherwise barred by statute. See id.

In imposing a sentence, the trial court may only consider enhancement factors that are "appropriate for the offense" and "not already . . . essential element[s] of the offense." Tenn. Code Ann. § 40-35-114. These limitations exclude enhancement factors "based on facts which are used to prove the offense" or "[f]acts which establish the elements of the offense charged." Jones, 883 S.W.2d at 601. Our supreme court has stated that "[t]he purpose of the limitations is to avoid enhancing the length of sentences based on factors the legislature took into consideration when establishing the range of punishment for the offense." State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997); Jones, 883 S.W.2d at 601.

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the defendant's potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

In this case, the trial court gave "very great weight" to the two enhancement factors it applied,

and on appeal the defendant neither challenges the enhancement factors' applicability or the weight afforded them to the trial court. While the trial court did not make a specific on-the-record finding as to the weight it gave the mitigating factor, given that the trial court imposed the maximum sentence, it is readily apparent from the record that the trial court gave the mitigating factor little to no weight. Under the revised sentencing act, this court may not review the weight afforded the sentencing and mitigating factors provided the trial court followed the principles of sentencing. Given that the enhancement factors were supported by the record and the trial court considered the mitigating factors as required, we conclude that the trial court followed the appropriate sentencing principles in this case. We therefore affirm the defendant's fifteen-year sentence for his evidence tampering conviction.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE