IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2010

**STATE OF TENNESSEE v. LEON GOINS**

**Direct Appeal from the Circuit Court for Dyer County**
**No. 08-CR-234      Lee Moore, Judge**

**No. W2009-02096-CCA-R3-CD  - Filed October 4, 2010**

The defendant, Leon Goins, was convicted by a Dyer County jury of possession of Schedule II cocaine with intent to sell or deliver, a Class B felony, and was sentenced to a term of twenty-five years in the Department of Correction.  On appeal, the defendant has raised the single issue of sufficiency of the evidence.  Following review of the record, we affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which DAVID H. WELLES and CAMILLE R. MCMULLEN, JJ., joined.

Danny H. Goodman, Jr., Tiptonville, Tennessee (on appeal), and James E. Lanier, District Public Defender, and Timothy J. Boxx, Assistant Public Defender (at trial), for the appellant, Leon Goins.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual Background**

Officer Thomas Langford of the Dyersburg Police Department received information from a confidential informant that he had seen a quantity of drugs in the defendant's residence at 607 Peabody.  Based upon this information, a warrant was obtained, and several officers proceeded to the residence in order to execute it.  Upon arriving at the home, officers observed several people in the yard outside the home.  Because the element of surprise was lost, officers proceeded to secure the residence through the use of forced entry.  Upon entry,

Officer Todd Thayer found one female in the living room of the residence, who was later determined to be Pam White, the defendant's fiancé. She was searched, but officers found no money or drug paraphernalia on her person. In the defendant's bedroom, officers discovered a table inside a walk-in closet. On the table was a rock of crack cocaine, later determined to weigh 7.9 grams. A razor blade, commonly used to cut pieces from a large rock, was found next to the drugs. No other items of drug paraphernalia were discovered. However, there was "a lot o f money laying on the dresser" in the bedroom. No attempt was made to obtain fingerprints from the razor blade because of the nature of the surface.

The defendant was found in the backyard of his residence, along with several other people. He was searched for safety reasons, and officers discovered $343 in his pocket and $67 in his wallet. He was arrested by officers on the scene. However, before officers could question the defendant or transport him to the jail, he began having chest pains. An ambulance was called, and he was transported to the local hospital.

Based upon the foregoing, the defendant was indicted by a Dyer County grand jury for one count of possession of cocaine, over .5 grams, with the intent to sell or deliver. The defendant pled not guilty, and a jury trial was held. At trial, each of the officers testified to the above scenario. Additionally, officers testified that a rock as large as the one found in the defendant's closet was not usually for a single user and that the value of the rock, intact, was approximately $250-$300. However, Officer Thayer further explained that smaller pieces, usually weighing .1 grams, were sold directly to users, but larger rocks weighing approximately 3.5 grams were sold to those intending to resell to others. He estimated that the value of the cocaine found in the defendant's closet, if broken down into smaller pieces for resale, would be approximately $1000.

The defendant presented five witnesses in his defense and proceeded under a theory that the cocaine belonged to Stanley Shaw. He first called Stanley Shaw, who admitted that he had given a sworn statement to police that the cocaine found in the defendant's residence was his. However, he clarified in his testimony that he had lost an $8 rock of cocaine at the defendant's house earlier and that he believed that is what he was accepting responsibility for in the statement. He went on to testify that the defendant had written out the statement for him. He testified that he did not live with the defendant at his residence and that he had been at work on the day the police came. He further admitted that he was a crack cocaine user but stated that he did not have the financial ability to purchase a rock of crack as large as the one found in the defendant's home. He went on to state that if he had that much crack, he would have smoked it all at one time and that it would have killed him.

The defense then called Jane Cherry, Stanley Shaw's employer. She testified that Shaw was not at work that day because the bowling alley was closed. According to Cherry,

Shaw earned approximately $70 per month for buffing the floors.

Finally, the defense called James Barr, Winston Sharp, and Pam White. Barr testified that he lived behind the defendant's residence and that he was outside on the day the police came. He stated that the police arrived before the defendant, whom he saw walking up the street. He further testified that Stanley Shaw had been staying with the defendant, but he did not see him on this particular day. He also testified that he and the defendant sold scrap metal together and that the defendant did this to supplement his social security disability. Finally, he acknowledged his own use of crack cocaine and admitted that a rock as big as the one found at the defendant's residence would not normally be for personal use.

Winston Sharp, the defendant's cousin, also testified that Shaw was living with the defendant at the time. He stated that he visited the defendant's home that day, January 9, and that Shaw had asked him if he wanted to buy some crack. However, after testifying that this occurred in the summer, he acknowledged that he might have been confused about the days. Finally, Pam White, the defendant's fiancé, testified that she was at the residence on that day and that a party was going on. She testified that the defendant was not there but that Shaw kept coming "in and out."

After hearing the evidence presented, the jury found the defendant guilty as charged. Following a subsequent sentencing hearing, the trial court sentenced him, as a Range III offender, to twenty-five years in the Department of Correction. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant raises the single issue of sufficiency of the evidence. The defendant is not disputing that a large rock of crack cocaine, weighing 7.9 grams, was found on a table inside the bedroom closet of his home. He challenges only whether the evidence sufficiently established that he exerted control over the cocaine or that he intended to sell or deliver it. In considering the issue of sufficiency of the evidence, we apply the rule that where the sufficiency of the evidence is challenged, the relevant question for the reviewing court is "whether, after viewing the evidence in the light most favorable to the [State], *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). This court will not reweigh or reevaluate the

evidence presented. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

"A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt so that, on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Although a conviction may be based entirely upon circumstantial evidence, *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1974), in such cases, the facts must be "so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone." *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991) (citing *State v. Duncan*, 698 S.W.2d 63 (Tenn. 1985)). However, as in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958) (citations omitted).

The defendant was found guilty of violating Tennessee Code Annotated section 39-17-417(a)(4) (2006), which makes it a crime to knowingly "possess a controlled substance with intent to manufacture, deliver or sell the controlled substance." "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b) (2006). In order to support this conviction, the State was required to show: (1) a knowing mental state; (2) possession of the controlled substance, here cocaine; (3) an intent to sell or deliver that cocaine; and (4) that the weight of the cocaine was .5 grams or more. *See* T.C.A. § 39-17-417(a). As noted, the defendant is only challenging that the State failed to prove that he knowingly possessed the cocaine with an intent to sell or deliver.

A conviction for possession of cocaine may be based upon either actual or constructive possession. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). However, before a person can be found to constructively possess a drug, it must appear that the person has the power and intention at any given time to exercise dominion and control over the drugs either directly or through others. *State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. *State v. Ross*, 49 S.W.3d 833, 845 (Tenn. 2001). However, a person in possession of the premises where controlled substances

-4-

are found may be presumed to possess the controlled substances. *Id*. Such circumstantial evidence may be sufficient to support a conviction. *State v. Gregory*, 862 S.W.2d 574, 577 (Tenn. Crim. App. 1993). Additionally, it is permissible for the jury to draw an inference of possession with intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered together. *State v. William Earl Kyles, Jr.*, No. W2001-01931-CCA-R3-CD (Tenn. Crim. App. at Jackson, May 3, 2002) (concluding that jury could infer possession of drugs with intent to sell or deliver from amount of drugs and circumstances surrounding arrest of defendant); *State v. James R. Huntington*, No. 02C01-9407-CR-00149 (Tenn. Crim. App. at Jackson, Mar. 29. 1995) (determining that jury could infer intent to sell marijuana primarily from large quantity of marijuana in defendant's possession). Finally, this court has concluded that the testimony of an arresting officer that the amount of cocaine found was not consistent with personal use and that the defendant was spotted by the officer in a location known for illegal drug sales, coupled with $114 in cash and a check for an unspecified amount found on the defendant's person, presented sufficient circumstances from which the jury could reasonably infer that the defendant intended to sell the cocaine. *State v. Nelson*, 275 S.W.3d 851, 867 (Tenn. Crim. App. 2008); *see also State v. Logan*, 973 S.W.2d 279. 281 (Tenn. Crim. App. 1998) (finding evidence of a large amount of cash found in conjunction with several small bags of cocaine provided sufficient evidence of intent to sell).

The defendant contends that the proof is insufficient because: (1) there were no scales, baggies, baking soda, or other items found which are normally associated with the sale of drugs; (2) the defendant was found outside the residence, and a search of his person yielded only cash; (3) at least six other people were present outside and one person was inside the home at the time; and (4) proof was presented that Stanley Shaw lived at the residence and initially claimed ownership of the drugs. He asserts that this proof, in conjunction with the officer's statement that the defendant was arrested only because the residence belonged to him, casts doubt that the jury had sufficient evidence to conclude beyond a reasonable doubt that the defendant possessed the cocaine with the intent to sell or deliver. We disagree.

First, we give credence to the defendant's assertion that there is no direct proof of possession or intent in this case, as the defendant was not physically found in the presence of the drugs. However, based upon the facts as presented, the jury was free to form several reasonable inferences. First, there is no dispute that the defendant resided at the residence where the drugs were discovered and, further, that the drugs were discovered in his bedroom closet. Evidence was presented in the form of an electric bill establishing the defendant's control over the premises. As such, we may infer that the person in possession of the premises, the defendant, was also in possession of the controlled substances therein. *See Ross*, 49 S.W.3d 833, 845 (Tenn. 2001). Additionally, officers testified that a rock of cocaine as big as the one found in the defendant's closet was typically for resale. This

inference is further supported by the fact that no items of drug paraphernalia were found in the home. Finally, officers found a large amount of cash in the bedroom and more than $400 on the defendant's person. While the defendant put forth evidence of alternate sources for the money, such as his disability income and his income from scrapping, he offered no direct proof of the origin of the money. The jury was free to reject his assertions.

Likewise, the jury also saw the written statement signed by Shaw and heard his testimony from the stand. While the defendant called witnesses to testify that Shaw was residing with him at the time, Shaw testified that he was not. He further testified and explained that his signing of the statement acknowledging ownership of the drugs was a misunderstanding, as he only intended to claim ownership of a small rock which he thought he had lost on a visit to the defendant's residence. Again, the jury heard this testimony, as well as that of the defendant's witnesses, and made credibility determinations. This court does not reevaluate such determinations.

Based upon the proof presented and the inferences which could be drawn therefrom, our review leads us to conclude that the evidence is sufficient to support the conviction. While the proof consists of circumstantial evidence, we conclude that it was reasonable for a jury to conclude that there was no other "reasonable theory or hypothesis except that of guilt." The evidence supports that there was no other reasonable explanation for the crack cocaine found in the defendant's closet other than that it belonged to him and was kept for the purpose of sale or delivery.

## CONCLUSION

After thorough review, we affirm the judgment of conviction entered by the Dyer County Circuit Court.

_____
JOHN EVERETT WILLIAMS, JUDGE

-6-