IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2008

**STATE OF TENNESSEE v. MAURICE CURRIE**

**Direct Appeal from the Circuit Court for Dyer County**
**No. C07-96   Lee Moore, Judge**

_____

**No. W2008-01090-CCA-R3-CD  - Filed September 21, 2009**

_____

Following a jury trial, Defendant, Maurice Currie, was found guilty of possession of more than 0.5 grams of cocaine with the intent to sell or deliver, a Class B felony.  The trial court sentenced Defendant, as a Range I, standard offender to eight years.  On appeal, Defendant argues that (1) the evidence is insufficient to support his conviction; (2) the trial court erred in denying his motion for a continuance; (3) the sentence imposed is excessive; and (4) the trial court erred in denying Defendant's motion that he be declared indigent for appellate purposes.  Upon our close review of the evidence, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Charles S. Kelly, Sr., Dyersburg, Tennessee, for the appellant, Maurice Currie.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Karen Waddell Burns, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

**I. Background**

Lieutenant Mike Dobis, with the Dyersburg Police Department, initiated a traffic stop of Defendant's vehicle on December 6, 2006.  Lieutenant Dobis arrested Defendant and performed a routine pat down search of Defendant's outer clothing before placing him in the patrol car. Defendant was transported to the police department for booking in the back of the patrol car.  After he was booked, Lieutenant Dobis transported Defendant to the county jail.  After Defendant exited the patrol car, Lieutenant Dobis flipped the back seat up and found a large baggie containing two baggies of crack cocaine and one baggie of powdered cocaine.

Lieutenant Dobis stated that the patrol car was searched after each transport of a prisoner, and only Lieutenant Dobis and the captain of the police department had access to his patrol car. Lieutenant Dobis said that the captain had never been inside his vehicle. Lieutenant Dobis stated that he kept his patrol car locked when he was not inside the vehicle.

Officer Sam Bell searched Defendant further inside the jail. A baggie of powder cocaine fell on to the floor when Defendant's jogging pants were turned inside out. Lieutenant Dobis said that Defendant's pants were baggy with elastic at the waist and cuffs. Officer Bell also found approximately two hundred and sixty dollars on Defendant. The baggies of cocaine and cash were logged into evidence and turned over to the evidence custodian, Investigator Mark Reynolds.

On cross-examination, Lieutenant Dobis stated that Defendant was handcuffed with his hands behind his back before he was placed in the patrol car. Lieutenant Dobis said that he started the pat down search at his head and worked his way down. Lieutenant Dobis searched under Defendant's arms, around his waist, and down each leg. Lieutenant Dobis said that he did not feel anything hard on Defendant's body. Lieutenant Dobis stated that the cocaine was found between the seat and back cushions. Lieutenant Dobis said that he did not hear or notice Defendant move around in the back seat on the ride to the police department.

Lieutenant Dobis acknowledged that he did not search his patrol vehicle immediately upon arriving at the police department, but he said that he locked the vehicle before escorting Defendant into the building. Defendant went through the booking process which took between thirty and forty-five minutes, and Defendant was not handcuffed during that time nor was he searched. After Defendant was booked, Lieutenant Dobis handcuffed Defendant again and put him back into the patrol car for transport to the county jail. Lieutenant Dobis believed that he handcuffed Defendant's hands in front for this portion of the trip. Lieutenant Dobis acknowledged that the crack cocaine found in the patrol car was approximately the size of a golf ball. Lieutenant Dobis acknowledged that individuals charged with drug offenses had previously been transported in his patrol car, but Lieutenant Dobis did not believe that he had made any other prior drug arrests on December 6, 2006.

Officer Sam Bell, a correctional officer with the Dyer County Jail, searched Defendant when he arrived. Defendant removed his jogging pants. Officer Bell shook the pants and a small baggie with a white powdery substance fell out. Officer Bell said that Defendant did not make any comments during the search and did not appear surprised when the cocaine was found.

Investigator Mark Reynolds, an evidence technician with the Dyersburg Police Department, testified that he received four baggies of cocaine from Lieutenant Dobis as well as $265.40. Investigator Reynolds logged the evidence into the evidence book. Later, Investigator Reynolds logged the evidence out and transported it to the T.B.I. crime laboratory in Memphis. Once the testing process was complete, the T.B.I. placed its seal on the evidence bag, and Investigator Reynolds returned the evidence to the police department. On cross-examination, Investigator Reynolds acknowledged that he was not asked to request a DNA or fingerprint analysis of the

baggies containing the cocaine. On redirect examination, Lieutenant Dobis said that he never requested that drug bags be subjected to DNA or fingerprint analysis.

Dana Parmenter, a forensic scientist with the T.B.I.'s Memphis crime laboratory, testified that the substances found in the baggies were cocaine and cocaine base, or crack cocaine. Agent Parmenter stated that the powdered cocaine weighed an aggregate of 3.4 grams, and the crack cocaine weighed an aggregate of 28.9 grams. The weights of the individual baggies of cocaine were 0.7 grams of powdered cocaine, 2.7 grams of powdered cocaine, 4.3 grams of rock cocaine, and 24.6 grams of rock cocaine.

## II. Denial of Motion to Continue

Defendant argues that the trial court erred in denying his request for a continuance on the day trial commenced in order to secure substitute counsel. Defendant acknowledged that he retained counsel to represent him on the charged offense but stated that he and trial counsel "had verbal altercations several times." The trial court told Defendant that he could proceed to trial with his retained counsel, secure substitute counsel immediately, or the trial court would revoke Defendant's bond and he would be incarcerated until such time as he could secure substitute counsel. Defendant chose to proceed to trial.

The State argues, and we agree, that Defendant has waived consideration of this issue on appeal because he failed to include the issue in his motion for new trial. Tennessee Rule of Appellate Procedure 3(e) states, in pertinent part, that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, ... or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); see State v. Martin, 940 S.W.2d 567, 569 (Tenn. 1997) (holding that a defendant relinquishes the right to argue on appeal any issues that should have been presented in a motion for new trial); State v. Dodson, 780 S.W.2d 778, 780 (Tenn. Crim. App. 1989); see also State v. Alvarado, 961 S.W.2d 136, 153 (Tenn. Crim. App. 1996) (observing that an issue is typically waived when it is raised for the first time on appeal). Based on the foregoing, we conclude that Defendant has waived consideration of this issue by failing to preserve it for appellate review.

## III. Sufficiency of the Evidence

Defendant argues that the evidence was insufficient to support a finding that he possessed the drugs found in the back seat of Lieutenant Dobis's patrol car. Defendant points out that he was subject to a pat down search before he was placed in the patrol car, and Lieutenant Dobis testified that he did not hear Defendant make any movements in the back of the patrol car. Defendant also submits that the evidence was insufficient to show that the powder cocaine found in his jogging pants exceeded 0.5 grams, because this baggie was placed in the larger package containing the other three baggies of powder cocaine before it was weighed.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. State v. Black, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Under Tennessee Code Annotated section 39-17-417(a)(4), "[i]t is an offense for a defendant to knowingly ... [p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance." Possession of 0.5 grams or more of cocaine under the described circumstances is a Class B felony. "Possession" may be actual or constructive, and may be proven by circumstantial evidence. See State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). Constructive possession requires proof that a person had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others. Shaw, 37 S.W.3d at 903 (quoting State v. Patterson, 966 S.W.2d 435, 444 (Tenn. Crim. App. 1997)). In other words, "constructive possession is the ability to reduce an object to actual possession." State v. Ross, 49 S.W.3d 833, 845-46 (Tenn. 2001) (citations omitted).

Lieutenant Dobis testified that Defendant was arrested, handcuffed with his hands behind his back, and placed in the back of Lieutenant Dobis's patrol car by himself. Lieutenant Dobis drove Defendant to the Dyersburg Police Department for booking. Lieutenant Dobis locked his patrol car and escorted Defendant into the building. After the booking process, Lieutenant Dobis transported Defendant to the county jail, again handcuffed, and by himself in the back of Lieutenant Dobis' patrol car. Defendant exited the vehicle and Lieutenant Dobis flipped up the back seat and found the cocaine. Lieutenant Dobis testified that it was standard procedure to check beneath the patrol car's back seat upon completing the transport of an individual who had been arrested. Lieutenant Dobis also testified that he kept his patrol car locked when he was not in the vehicle, and only his captain and Lieutenant Dobis had keys to the patrol car.

Agent Parmenter testified that the substances in the four baggies were crack cocaine and powdered cocaine. Officer Bell testified that he placed the baggie of powdered cocaine found in Defendant's jogging pants inside the baggie containing the other three baggies of crack and powdered cocaine, apparently without identifying the baggie as the one found on Defendant's person. Agent Parmenter, however, testified that the two baggies containing powdered cocaine individually

weighed 0.7 grams and 2.7 grams. Therefore, both baggies of powdered cocaine weighed in excess of the 0.5 grams required to support a Class B felony.

Viewing the evidence in a light most favorable to the State, we conclude that the circumstantial evidence established that Defendant was in possession of the cocaine found in the back of Lieutenant Dobis's patrol car. Even assuming arguendo, however, that the jury rejected the State's theory that Defendant removed the cocaine from his person and placed it in the back seat of the patrol car, we observe that Defendant does not challenge his possession of the powdered cocaine removed from his jogging pants during the search at the county jail. Although there was no proof as to which baggie of powdered cocaine was found on Defendant's person, each baggie of powdered cocaine exceeded the 0.5 gram threshold to support a Class B felony possession of cocaine. Based on our review, we conclude that the evidence is sufficient to support the jury's finding beyond a reasonable doubt that Defendant was in possession of 0.5 grams or more of cocaine.

"[A] person ... acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 3 9-11-302(b). "Deliver" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance." With regard to a determination of the defendant's intent to sell or deliver, proof of intent usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence. See Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973). It is permissible for the jury to "draw an inference of intent to sell or deliver when the amount of the controlled substance and other relevant facts surrounding the arrest are considered together." T.C.A. § 39-17-419.

"In the past, we have affirmed convictions where the amount of the controlled substance was greater than .5 grams and there existed physical or testimonial evidence, which allowed the jury to draw a permissible inference from the facts surrounding the arrest that the defendant had intent to sell or deliver." State v. John Fitzgerald Belew, No. W2004-01456-CCA-R3-CD, 2005 WL 885106, at *5 (Tenn. Crim. App., at Jackson, Apr. 18, 2005) (citing State v. Chearis, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999), no perm. to appeal filed (holding that 1.7 grams of crack cocaine, no drug paraphernalia, and 5.1 grams of baking soda, which testimony revealed was an agent used in manufacture of cocaine, was sufficient evidence for a jury to find an intent to deliver); see also, State v. Logan, 973 S.W.2d 279, 281 (Tenn. Crim. App. 1998) (finding evidence of a large amount of cash found in conjunction with several small bags of cocaine provided sufficient evidence of intent to sell); State v. Brown, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (recognizing that the absence of drug paraphernalia, and manner of packaging of drugs supported an inference of intent to sell); State v. Matthews, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding testimony of amount and street value of 30.5 grams of cocaine was admissible to infer an intention to distribute); State v. William Martin Frey, No. M2003-01996-CCA-R3CD, 2004 WL 2266799, at *8 (Tenn. Crim. App. at Nashville, Oct. 6, 2004), perm. to appeal denied (Tenn. Feb. 28, 2005) (holding that testimony of 1.8 grams of cocaine, a stack of cash, and absence of drug paraphernalia constituted circumstances from which jury could reasonably infer intent to sell); State v. William F. Cartwright, No. M2003-00483-CCA-R3-CD, 2004 WL 1056064, at *4 (Tenn. Crim. App. at Nashville, May 10, 2004), no

perm. to appeal filed (holding testimony of large volume and street value of 25.5 grams of cocaine, typical dosages for addicts, and absence of drug paraphernalia sufficient to support inference and conviction of intent to deliver).

More recently, in State v. Nelson, 275 S.W.3d 851, 867 (Tenn. Crim. App. 2008), this Court concluded that the arresting officer's testimony that the amount of cocaine found was not consistent with personal use and that the defendant was spotted by the officer in a location known for illegal drug sales, coupled with $114 in cash and a check for an unspecified amount found on the defendant's person, presented sufficient circumstances from which the jury could reasonably infer that the defendant intended to sell the cocaine.

In the case sub judice, evidence was presented that Defendant possessed powdered cocaine with an aggregate weight of 3.5 grams and crack cocaine with an aggregate weight of 28.9 grams. The crack cocaine and powdered cocaine found in the patrol car were packaged in three separate baggies and placed in a larger baggie. The cocaine found on Defendant's person was also packaged in a small baggie. There was no evidence presented at trial that Defendant had any drug paraphernalia on his person when he was arrested. Defendant had $265.40 in cash on his person. Although a close case, we conclude that the amount of cocaine, the manner in which it was packaged, the absence of drug paraphernalia, and the amount of cash in Defendant's possession provides sufficient circumstantial evidence from which a jury might infer that Defendant possessed more than 0.5 grams of cocaine with an intent to sell rather than to use. See Brown, 915 S.W.2d at 8. Defendant is not entitled to relief on this issue.

## IV. Sentencing Issues

Defendant argues generally that the length of his sentence is "excessive." Defendant contends that the "trial court listened to the evidence, as well as the jury, and yet sentenced [Defendant] to a prison term worthy of possession of well more than could be legally proven."

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is improper. See T.C.A. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). Defendant, however, has failed to include a transcript of the sentencing hearing in the record on appeal. It is the appellant's duty to "have prepared a transcript of such part of the evidence or proceedings as is necessary to convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Tenn. R. App. P. 24(b). Without a proper record for our review, we are unable to review Defendant's sentencing issues and must presume that the findings of the trial court are correct. State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

In addition, Defendant fails to cite any authority or provide any references to the record in support of his contention that his sentence is excessive. Rule 10(b) of the Tennessee Court of Criminal Appeals states that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."

Finally, Defendant was convicted of a Class B felony, and therefore subject to a sentence of between eight and twelve years as a Range I, standard offender. T.C.A. § 40-35-112(a)(2). A trial court is mandated by the Sentencing Act to "impose a sentence within the range of punishment." T.C.A. § 40-35-210(c). The trial court sentenced Defendant to eight years, or the minimum sentence in his sentencing range.

Based on all of the foregoing, we conclude that Defendant is not entitled to relief on this issue.

## V. Indigency on Appeal

Defendant argues in his brief that the trial court erred in finding that he was not indigent for purposes of appeal. Rule 18 of the Tennessee Rules of Appellate Procedure provides that a defendant may seek leave in the trial court to proceed on appeal as an indigent. Tenn. R. App. P. 18(b). If the trial court denies the defendant's request, he or she may file a motion in the appellate court within thirty days after the trial court clerk serves notice that the trial court denied the motion to proceed as an indigent. Id. 18(c). A defendant may also initially seek leave from the appellate court to proceed as a poor person. Id. 18(d). It appears that Defendant did not seek review of the trial court's denial of his motion to proceed on appeal as an indigent, nor did Defendant seek leave to so proceed by motion to this Court. Nonetheless, Defendant was declared indigent by order of the trial court in an unrelated case. See State v. Maurice Curry, No. W2008-01013-CCA-R3-CD, 2008 WL 5272474 (Tenn. Crim. App., at Jackson, Dec. 18, 2008), perm. to appeal denied (Tenn. Apr. 27, 2009). We thus declare Defendant indigent for purposes of this appeal.

### CONCLUSION

After a thorough review, we affirm the judgment of the trial court, and declare Defendant indigent for purposes of this appeal.

_____
THOMAS T. WOODALL, JUDGE

-7-