IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 7, 2021

**STATE OF TENNESSEE v. JAQUARIUS D. CARPENTER**

**Appeal from the Circuit Court for Madison County**
**No. 18-915    Roy B. Morgan, Jr., Judge**

_____

**No. W2020-00896-CCA-R3-CD**

_____

Defendant, Jaquarius D. Carpenter, was convicted by a jury of possession with the intent to sell 0.5 grams or more of cocaine, possession with the intent to deliver 0.5 grams or more of cocaine, simple possession of marijuana, and possession of drug paraphernalia. The trial court imposed an effective eighteen-year sentence, as a Range II multiple offender, to be served in the Department of Correction. On appeal, Defendant contends that the evidence is insufficient to support his convictions for possession with the intent to sell or deliver cocaine and simple possession of marijuana. Following our review of the entire record and the briefs of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P.3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and NORMA MCGEE OGLE, JJ., joined.

J. Colin Morris, Jackson, Tennessee, for the appellant, Jaquarius D. Carpenter.

Herbert H. Slatery III, Attorney General and Reporter; Caroline Drinnon, Assistant Attorney General, Andrew C. Coulam, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Bradley Champine, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**Factual and Procedural Background**

This case arose when Defendant began selling drugs out of David Anthony Brown's apartment ("the apartment") located at 139A Railroad Street in Jackson, Madison County.

The authorities developed Defendant as a person of interest and conducted stationary surveillance on the apartment. On March 28, 2018, authorities executed a search warrant of the apartment and arrested Defendant, along with Cortney Harvey, David Anthony Brown, and Willie D. Brown, no relation. From the bathroom, officers retrieved a bag of cocaine weighing 21.75 grams and a loaded handgun found in the toilet tank. Officers also retrieved a bag of marijuana weighing 2.75 grams found on the living room floor.

A Madison County Grand Jury entered a true bill charging Defendant with possession with the intent to sell 0.5 grams or more of cocaine (count one), possession with the intent to deliver 0.5 grams or more of cocaine (count two), possession of marijuana (count four), and possession of drug paraphernalia (count five). Willie D. Brown ("Willie Brown") and Cortney Harvey were also charged in the two counts involving the sale and delivery of cocaine (counts one and two). Courtney Harvey, Willie Brown, and David Anthony Brown ("David Brown") were also charged in counts four and five.

David Brown was charged separately with possession of cocaine in count six. He pled guilty to misdemeanor possession of a controlled substance and was sentenced to a total effective sentence of eleven months, twenty-nine days on supervised probation. In exchange for his plea, David Brown agreed to testify truthfully and consistently with his statements and as a witness against his co-defendants and did in fact, testify as a State's witness. The case went to trial with Defendant, Mr. Harvey and Willie Brown as co-defendants.

At the joint trial, Sergeant Troy Wayne Kelly, an officer in the Tennessee Counter Drug Task Force, testified that he conducted surveillance on the apartment for possible illegal drug activity. Sergeant Kelly had completed specialized training in reconnaissance and area observation and was assigned to observe and log pedestrian and vehicle traffic to and from the apartment and note any distinct traffic patterns. He was also assigned to keep a lookout for Defendant, who was identified as a person of interest. Sergeant Kelly was informed that Defendant drove a white Chevy sedan.

Sergeant Kelly surveilled the apartment in the two days leading up to the execution of the warrant and on the day the warrant was executed on March 28, 2018. Sergeant Kelly first observed Defendant park his white Chevy sedan in the driveway and enter the apartment on the second day of surveillance. Sergeant Kelly assumed that Defendant lived there because he let himself in with a set of keys and entered and exited the apartment "at least three to four times" by himself in the same manner that day and also two to three times the following day before the authorities executed the search warrant. Sergeant Kelly observed foot and vehicle traffic to and from the residence. Altogether, he saw "ten or more people" enter the apartment on Monday and Tuesday. He also observed "[a] lot of

vehicle traffic coming to the residence." Sergeant Kelly observed a steady stream of people entering and leaving the apartment while Defendant was inside.

Sergeant Kelly photographed Defendant on the second day of the surveillance. Four photographs of Defendant entering and exiting the apartment were exhibited to the jury. Sergeant Kelly conceded that none of the photographs showed Defendant selling drugs or smoking marijuana. Because he was conducting stationary surveillance outside the apartment, Sergeant Kelly did not get a look inside. He acknowledged that heavy traffic alone does not constitute conclusive proof of illegal drug activity at a residence but is one of several factors to consider when investigating drug activity.

James Gibbons, Jr., was among the officers on the Jackson City Police Department SWAT team who executed the search warrant on the apartment on March 28, 2018. Officer Gibbons was on the entry team and was the "number one guy through the door" when entering the residence. Upon entering the apartment, Officer Gibbons saw five people in the living room: Defendant, Willie Brown, David Brown, Mr. Harvey, and an unidentified woman. All five people scattered to the kitchen or the bathroom when the SWAT team entered the apartment. Defendant, Willie Brown, David Brown, and the unidentified woman complied with Officer Gibbons's instructions to surrender and exited the apartment without incident. By process of elimination, Officer Gibbons knew that one person remained in the house and that the person could only be in one other room: the bathroom. The bathroom door remained closed although Officer Gibbons had already announced the presence of the SWAT team and instructed everyone to surrender. He opened the door to the bathroom and saw Mr. Harvey, alone, lying face down on the floor. Because Officer Gibbons was tasked in securing the area, he did not collect any evidence or come in contact with any drugs or a weapon. He testified that he did not see Mr. Harvey with a weapon when he opened the bathroom door.

Robert Pomeroy, an investigator with the Jackson Police Department and an officer in the Metro Narcotics unit, was assigned to the rear of the apartment during the execution of the search warrant. Investigator Pomeroy's task was to "port the window", which he explained involved breaking the bathroom window of the apartment to prevent an occupant from destroying or flushing evidence and as a diversionary tactic as the SWAT team entered the front of the apartment. Upon breaking the bathroom window, Investigator Pomeroy saw Mr. Harvey, alone and crouched down on the bathroom floor. Investigator Pomeroy instructed Mr. Harvey to show his hands until the SWAT team could detain him. Because he was tasked with porting the window and detaining any occupants, Investigator Pomeroy did not search the bathroom or any other room in the apartment. He learned later that some narcotics and a firearm were found in the bathroom.

Mark Taylor, an investigator in the Madison County Sheriff's Office with over 800 hours of training in narcotics enforcement, testified that he assisted in the search of the apartment and located a bag of what appeared to be crack cocaine in the bathroom, a digital scale in a kitchen drawer, and another larger digital scale on the kitchen counter. After he refreshed his recollection with the incident report, Investigator Taylor testified that he field-tested residue observed on the larger digital scale. The residue tested presumptively positive for cocaine. He could not recall specifically whether he field-tested the substance found in the bathroom. He explained that an investigation does not stop with a presumptive positive field test and that all substances are sent to the Tennessee Bureau of Investigation ("TBI") crime laboratory for additional testing as he confirmed was done in this case.

Investigator Taylor testified that he was trained and educated on the street value of narcotics and how dealers weigh and package drugs for resale. Based on his training and experience, Sergeant Kelly opined the presence of digital scales, cocaine positive residue on one of the scales, and the "big" amount of cocaine found in the bathroom "absolutely" suggested cocaine for the purpose of resale and not for personal use. He explained that dealers use digital scales to measure and weigh cocaine so that their customers will know how much product they are purchasing. According to Sergeant Kelly, 20 grams of cocaine is considered "a lot" because it is sold in increments of a tenth of a gram. For instance, he testified that a tenth of a gram will generally sell for $10, two-tenths of a gram of cocaine will typically sell for $20 and a half gram of cocaine will typically sell for $50. If all of the 20 grams of cocaine were sold in smaller increments, it could generate $20,000. He explained further that crack cocaine is measured and sold in quantities of a tenth of a gram and classified as "rocks." He added that different factors such as the relationship between the dealer and the user, whether the parties know and trust each other, and the purity of the cocaine, will determine the price.

Emily Salao McDonald, a detention specialist with the Madison County Sheriff's Office, testified that she recovered a plastic bag containing a substance in Mr. Harvey's wallet when he was being booked. Mr. Harvey identified the substance as cocaine. The parties stipulated to the laboratory report confirming that the substance found in Mr. Harvey's wallet was cocaine. Mr. Harvey was not charged with the cocaine found in his wallet.

Clarence Calvin Benard, a detention specialist with the Madison County Sheriff's Office, testified that he and two other detention specialists, Sergeant Pruitt and Officer Hogg, oversaw a strip search of Willie Brown during his booking. Officer Benard testified that a small plastic bag fell from Willie Brown's groin area as he coughed while in a squatted position. Willie Brown denied that the bag belonged to him. Willie Brown was charged with introducing cocaine into a correctional facility (count three).

David Brown testified that he was arrested on March 28, 2018, with Defendant, Willie Brown, Mr. Harvey, Carlson Cole, and Debra Ellison who was David Brown's girlfriend at the time his apartment was searched. He was charged in the case with Defendant, Mr. Harvey, and Willie Brown. Neither Ms. Ellison nor Mr. Colson was charged in the case. David Brown accepted the State's offer to testify in the case in exchange for a probationary sentence of eleven months, twenty-nine days for misdemeanor possession of a controlled substance. He agreed that he had been arrested "plenty of times" resulting in convictions of "several crimes." He acknowledged that he had already violated his probation in the case twice for testing positive for crack cocaine and had recently violated his probation a third time for yet another failed drug test. David Brown explained that he had been addicted to crack cocaine "on and off" for twenty years and first tried crack in the late 1980s. He began drawing disability in 2014. He denied that he was a drug dealer.

David Brown explained that he met Defendant through a neighbor "a couple of months or more" before the warrant to search his apartment was executed. Defendant would stop by David Brown's apartment to "smoke a little weed" and play video games. Defendant usually came over with his cousin, Mr. Harvey. Although David Brown did not know Defendant very well, he gave Defendant a key to his apartment. David Brown also permitted Mr. Harvey to stay overnight because Mr. Harvey reportedly did not have a place to stay. Defendant was aware that David Brown smoked crack cocaine because Defendant would leave him some crack cocaine in the apartment along with some marijuana.

David Brown met Willie Brown for the first time when his apartment was searched. David Brown recalled that Defendant, Mr. Harvey, and Willie Brown had come to his apartment so that Mr. Harvey could give Willie Brown a haircut. David Brown was surprised by the amount of crack cocaine found in his apartment. He denied that the cocaine was his because he could not afford that much cocaine.

While David Brown's testimony regarding his record, his plea agreement, and the preliminary facts of the case were clear and affirmative, the remainder of his testimony was equivocal and uncertain. For instance, during his initial testimony, the State asked him a series of questions about what he told investigators on March 28, 2018, about Defendant, Mr. Harvey, and the events leading up to the search of his apartment. For many of the questions, David Brown could not recall "exactly" what he told the investigators because the interview took place more than "a year and a half ago." Additionally, he could not recall whether he told investigators that Defendant had given him half a gram of cocaine for working at his car wash, whether he saw Mr. Cole buy crack cocaine in his apartment, or whether he saw a woman named "Pam" buy cocaine at the apartment the night before the search. In response to some of the same questions, David Brown added that "he may have" told investigators that Defendant gave him cocaine in lieu of cash for working at his

car wash and that the cocaine found in his bathroom belonged to Defendant and Mr. Harvey. And although "Pam" may have stopped by his apartment before the raid, David Brown did not know whether she had any dealings with Defendant because he was in his room when she came over.

When asked whether he told investigators that Defendant and Mr. Harvey sold crack cocaine out of his apartment, David Brown replied that he was "not in [his] right mind at the time because [he] had been using." He testified that he did not witness Defendant or Mr. Harvey sell drugs in his apartment. He suspected that they "may have" been using his apartment to sell cocaine and that the cocaine found in his bathroom "may have" belonged to Defendant. He maintained that he did not know "exactly" what they did in his apartment other than "smoke weed" and "sit around." However, David Brown confirmed that he told Defendant and Mr. Harvey to stop selling cocaine out of his apartment. When they refused to stop, David Brown dropped the matter and began staying in his room. And although it was his apartment, David Brown admitted that he put a bucket in his bedroom so that he and his girlfriend could relieve themselves without leaving the room and having to deal with Defendant.

Despite his poor recollection about much of his statement, David Brown denied telling investigators that Defendant physically assaulted him and that Defendant had promised to post Mr. Harvey's bond if Mr. Harvey accepted responsibility for the cocaine and the gun found in the bathroom. Regarding Defendant's assaultive behavior, David Brown testified instead that Defendant brought someone to the apartment to physically assault him. This was yet another reason David Brown remained in his bedroom or "stayed gone a whole lot" out of his own apartment. David Brown reluctantly revealed that he felt "threatened" and "intimidated" by Defendant because he was affiliated with a gang. David Brown feared that Defendant would harm his children because he always made a point to mention them. David Brown was fearful of Mr. Harvey because of his close association with Defendant. Because of Defendant's gang affiliation, David Brown declined to involve the police in Defendant's actions.

At the conclusion of David Brown's testimony, the State moved to introduce selected portions of David Brown's audio-recorded statement as substantive evidence during the testimony of Investigator Dennis Ifantis, an officer in the Madison County Sheriff's Office. *See* Tenn. R. Evid. 803(26) (exception to hearsay permitting a prior inconsistent statement to be treated as substantive evidence). The State clarified during a hearing outside the presence of the jury that David Brown had given two statements six days apart. During the questioning of David Brown, the State had not distinguished between the two statements. It was undisputed that all parties had received both statements in discovery.

- 6 -

At the jury-out hearing, Investigator Ifantis testified that David Brown gave a written statement on March 29, 2018, the day after his arrest while he was being held with Defendant. Four days later, after David Brown was no longer in the same holding cell with Defendant, he reached out to investigators to talk about the case a second time and gave a second statement on April 4, 2018, which was audio-recorded.

Investigator Ifantis testified that on April 4, 2018, he had asked David Brown whether Defendant and Mr. Harvey had intimidated him into selling drugs out of his apartment. The State identified and played four selections from the recorded statement. In the first selection, David Brown stated that he had "no choice" but to let Defendant sell narcotics out of his apartment. He feared that Defendant would harm his three children or kill one of his sons who was in prison. In the second selection, David Brown stated that he was "scared" to call the police because he feared that Defendant would harm his children. David Brown and his girlfriend would keep to themselves in the back bedroom whenever Defendant and Mr. Harvey were in his apartment. David Brown "couldn't say anything earlier (first statement)" because he and Defendant were in the same holding cell. David Brown sent "notes" to the police requesting another interview after he and Defendant were "separated." In the third selection, David Brown told investigators that he was afraid Defendant would "retaliate" against him. David Brown stated that he had been "hit" and had taken "unnecessary punches" from Defendant. David Brown was also fearful of Mr. Harvey. In the fourth and final selection, David Brown again stated that Defendant hit him when he told Defendant to stop selling crack cocaine out of his apartment. He pointed to a scar on his body. David Brown "hate[d]" the situation because he and his girlfriend were "getting along." For each selection played, the transcript indicates the time marker of the beginning of the selection, but does not indicate when the recording stopped playing.

The trial court denied the State's motion to admit the recorded audio statement as substantive evidence but permitted the State to recall David Brown for questioning and to use the statement for the limited purpose of impeachment. *See* Tenn. R. Evid 613. David Brown was recalled over the objections of Defendant and Mr. Harvey. On recall, David Brown testified that he gave both the written statement on March 29, 2018, and the audio recorded statement on April 4, 2018. He reviewed the first statement wherein he accused Defendant and Mr. Harvey of selling crack cocaine out of his apartment. In the same statement, David Brown admitted that Mr. Harvey would give him crack cocaine for using his apartment. During his prior testimony, David Brown insisted that he only suspected Defendant and Mr. Harvey of selling cocaine out of his apartment and that Mr. Harvey had given him some cocaine.

As for the second statement, David Brown agreed that investigators met him at his request. David Brown insisted that he "never" told investigators that Defendant had assaulted him. He maintained that Defendant had someone else assault him. The State

then moved to impeach David Brown by playing selections from the second statement. Without objection, four selections from David Brown's April 4, 2018, audio statement were played for the jury. While the transcript does not identify which selections were played for the jury, based on David Brown's responses it appears they were the same selections played during the prior jury-out testimony of Investigator Ifantis.

In the second statement, David Brown alleged that Defendant had physically assaulted him when David Brown asked Defendant to stop selling cocaine out of his apartment, that Defendant and Mr. Harvey were selling cocaine out of his apartment, that Defendant had "paid" him with half a gram of cocaine for working at his car wash, that a woman named "Pam" purchased crack from Defendant before the police arrived to search his apartment, and that Defendant promised to post Mr. Harvey's bond if Mr. Harvey accepted the drug and gun charges. After each selection of the audio recording was played, David Brown identified his voice on the recording and acknowledged what he had told investigators about the case.

Dennis Ifantis testified that at the time of the search warrant in March 2018, he was the lead investigator of the case and an officer in the Jackson-Madison County Metro Narcotics Unit. Investigator Ifantis testified as an expert in narcotics trades, sales and practices without objection. Investigator Ifantis prepared and executed the search warrant on David Brown's apartment on March 28, 2018. He also photographed the evidence that was collected at the scene which included a bag of marijuana in the living room floor. Some of the marijuana had spilled onto the floor. Investigator Ifantis testified that the bag was within reach of the three people arrested in the living room: Defendant, Willie Brown, and David Brown. He explained that the apartment was barely one thousand square feet and was very small.

Investigator Ifantis also collected a crack pipe and a spark plug which had been fashioned into a crack pipe for resale. Powdery residue found on a digital scale field tested positive for cocaine. A bag of crack cocaine was found on the bathroom floor near the tub and a loaded .32 caliber semi-automatic pistol was found in the toilet tank. A live .32 caliber round was found on the kitchen floor. Defendant had $630 in cash on his person. Investigator Ifantis also searched the vehicle parked outside the apartment and observed marijuana roaches in the ashtray. A letter addressed to Mr. Harvey was also found in David Brown's apartment.

Investigator Ifantis's testimony was consistent with Investigator Taylor's testimony regarding the likely purpose of the cocaine found in the apartment. Investigator Ifantis opined that the amount of cocaine found in the bathroom suggested possession for resale and not for personal use. He testified that cocaine in excess of 20 grams usually suggests possession for resale. He explained that the average user does not keep "that much

[cocaine] on them." He explained further that the street value of crack cocaine is measured and priced based on tenths of a gram: $10 for one-tenth of a gram, $20 for two-tenths of a gram, and $50 for five-tenths of a gram. He testified that a typical user will purchase $20-$40 worth of cocaine at one time which is sufficient for a user "to get high." He added that a user will smoke crack as soon as they get it rather than carry it around because doing so would be impractical.

Like Investigator Taylor, Investigator Ifantis testified that digital scales are used to weigh and measure cocaine for resale. He explained further that drug dealers often use a gun to provide security because they will not call the police if they are robbed or assaulted during a transaction. Investigator Ifantis testified that the amount of cocaine, the presence of digital scales, the firearm, the large amount of cash in Defendant's possession, and the volume of foot traffic to David Brown's apartment were strongly indicative of illegal narcotic trafficking.

Investigator Ifantis testified that based on his training and experience, Defendant and Mr. Harvey were using David Brown's apartment to elude law enforcement and prosecution efforts. He described David Brown's apartment as a "trap house" where drug dealers would use the home of an acquaintance or a user to sell drugs. He explained that dealers commonly conduct illegal drug transactions in someone else's home to elude law enforcement. He described David Brown as the kind of person a drug dealer would target because David Brown was addicted to crack and could be easily "manipulated and abused." In this instance, Defendant exploited David Brown's addiction to use his apartment as a "trap house" to sell drugs and avoid prosecution.

Investigator Ifantis interviewed David Brown both times. He testified that David Brown did not exhibit any signs of impairment or being under the influence of a controlled substance. He explained that he was in no position to promise David Brown anything and that only the District Attorney's office could negotiate a settlement offer.

Investigator Ifantis also interviewed Willie Brown and Mr. Harvey. Willie Brown stated that he drove Defendant and Mr. Harvey to David Brown's apartment but stayed to get his hair cut. He was at the apartment thirty to forty-five minutes when "the police raided the house." He admitted that the marijuana roaches found in the car belonged to him. He denied knowing "anything about the cocaine" that fell from his body when he was searched in the county jail.

Mr. Harvey informed Investigator Ifantis that he ran to the bathroom when the police raided the apartment. Mr. Harvey admitted that the gun and the ounce of cocaine found in the bathroom belonged to him as well as the marijuana found in the living room. Mr. Harvey also admitted to selling crack "occasionally" but declined to identify his

source. Investigator Ifantis did not charge Defendant with a gun charge because Mr. Harvey insisted that the gun was his.

TBI Special Agent Carter DePew testified as an expert in forensic chemistry and drug identification. Agent DePew tested three substances retrieved from the apartment. He testified that a bag retrieved from the apartment weighed 21.75 grams and tested positive for cocaine. A second bag retrieved from Willie Brown likewise tested positive and weighed 1.99 grams. A third bag retrieved from the living room was positive for marijuana and weighed 2.75 grams

Defendant and Willie Brown did not testify. Mr. Harvey, age forty, exercised his right to testify. He was in the courtroom and therefore heard the testimonies of the State's witnesses. He confirmed that he was in the bathroom along with a bag of cocaine and a firearm when the police executed the search warrant on David Brown's apartment. Mr. Harvey testified that he went to David Brown's apartment after he finished working at Defendant's car wash. He admitted that he went there to get "high" and used the money he earned from working at the car wash to purchase crack from Defendant, who is his cousin. Mr. Harvey paid $20 for a "whole twenty piece" of crack cocaine. Mr. Harvey testified that he had been a drug addict for fifteen years and had commonly used cocaine, heroin, and crack cocaine to feed his addiction. He added that he used both crack and heroin the day the warrant was executed. Mr. Harvey was not alone in going to the apartment to get high. He recalled seeing a man named Joshua Johnson getting high at the apartment along with a "houseful of folks."

As Mr. Harvey was getting high, he heard a knock on the front door. He answered the door and saw a woman named "Pam." She had come over to buy crack cocaine from Defendant. Mr. Harvey testified that he witnessed the transaction. The police executed the warrant after Pam left.

Mr. Harvey testified that he and Defendant ran to the bathroom when the police "hit the door." Mr. Harvey dropped to the floor when he heard police at the bathroom window. Defendant however, exited the bathroom and slammed the door behind him. Mr. Harvey denied that the bag of cocaine or the gun found in the bathroom was his or that he put them there. He was unaware that there were any drugs in the bathroom and likewise had "no idea" why the gun was stored in the toilet. He had never seen the gun until the day of the search warrant. He denied that Defendant gave him the gun for protection or to hide it in the toilet. He also denied seeing Defendant put the gun in the toilet tank. He finally admitted that "[he] lied then" about owning the gun.

According to Mr. Harvey, Defendant promised to post his bond and get him an attorney if he took the gun charge. Defendant however, never posted Mr. Harvey's bond.

He did not agree to take the cocaine charge or accept responsibility for the cocaine found in the bathroom despite his statement to the contrary. He explained that he had used marijuana the night before he gave his statement and therefore was not "in [his] right mind." Mr. Harvey testified that he had no prior convictions for drug or weapons charges and only had a prior conviction for driving on a suspended license.

Mr. Harvey testified that he did not know whether Defendant regularly sold drugs out of David Brown's apartment. However, on cross-examination by Willie Brown's counsel, Mr. Harvey testified that he had been regularly going to David Brown's apartment to purchase crack from Defendant three weeks leading up to the police raid. He repeatedly denied that he was a drug dealer.

Although he correctly identified the amount of cocaine found in the bathroom, Mr. Harvey denied that he knew how much was in the bag. He did not recall telling the police that there was an ounce of cocaine in the bag found in the bathroom. He also denied that the bag was found next to him on the floor of the bathroom. He intended to take the gun charge only.

Mr. Harvey testified that the cocaine found in his wallet was the leftover stash he purchased from Defendant that very evening. On redirect examination, Mr. Harvey clarified that he intended to take responsibility for the gun and the cocaine found in his wallet, not the 20 grams of cocaine found in the bathroom. He later testified that Investigator Ifantis failed to amend his statement accordingly. In addition to the two felony drug charges, Mr. Harvey was charged with tampering with evidence, employing a firearm during the commission of a dangerous felony, and possession of a firearm.

Mr. Harvey rested his case, and Willie Brown called Joshua Johnson to the stand. Mr. Johnson testified that he went to David Brown's apartment on March 28, 2018, to give Defendant and Willie Brown haircuts. He stayed there about forty-five minutes to give both men haircuts and left fifteen to twenty minutes before the police arrived. He recalled seeing seven people in the apartment while he was there. Mr. Harvey was already in the apartment when he arrived. According to Mr. Johnson, Mr. Harvey was using drugs in the kitchen near the bathroom, and a gun was plainly visible on the kitchen table near him. Mr. Johnson testified that he saw powder cocaine but not crack cocaine. Mr. Johnson admitted that he used drugs while he was at the apartment. He later clarified that he was already high on cocaine when he got to the apartment. Despite being high, Mr. Johnson maintained that he was fully alert and had no problems cutting hair. He observed foot traffic to and from the house. Altogether, he observed five people he did not know enter and exit the bathroom. Mr. Johnson testified that Mr. Harvey answered the door and led each person to the bathroom. Because Mr. Johnson did not go to the bathroom, he did not know what was going on inside.

The State recalled Investigator Ifantis in response to Mr. Harvey's testimony about his statement. Investigator Ifantis recalled taking Mr. Harvey's statement the day after his arrest. He testified he was knowledgeable about various signs of impairment based on his training and experience. He testified that Mr. Harvey did not exhibit any of the telltale signs of impairment. He added that if Mr. Harvey had been impaired, he would not have interviewed Mr. Harvey because any statement given under the influence would not be reliable or constitutional.

Investigator Ifantis confirmed that Mr. Harvey reviewed the statement and was given the opportunity to make any changes. Mr. Harvey signed the statement after reviewing it. Investigator Ifantis crossed out the extra space in the statement so that nothing could be added after Mr. Harvey had reviewed and signed it. Mr. Harvey was not told about the field weight of the crack cocaine found in the bathroom before giving his statement.

Investigator Ifantis testified that Defendant and Mr. Harvey were in the same holding cell before Mr. Harvey gave his statement. Although co-defendants are separated to keep them from talking about the case, Investigator Ifantis stated that Defendant and Mr. Harvey had plenty of time to talk about the case before Mr. Harvey gave his statement. Investigator Ifantis opined that Mr. Harvey's statement was coerced and that at the time of trial was still under Defendant's influence.

Based on the proof, the jury convicted Defendant as charged in the four counts. The trial court merged counts one and two and sentenced Defendant, a Range II multiple offender, to eighteen years for possession with the intent to sell cocaine and eleven months, twenty-nine days on each count of possession of marijuana and possession of drug paraphernalia. The trial court ran all three sentences concurrently with but consecutively to sentences in two other Madison county cases. It is from these judgments that Defendant filed a timely appeal.

**Analysis**

On appeal, Defendant claims that the evidence is insufficient to support his conviction for possession with the intent to sell or deliver cocaine and simple possession of marijuana. However, Defendant devotes his argument to challenging only his felony cocaine possession conviction. He argues that the proof lays the blame squarely on co-defendant Cortney Harvey and that this court should reject portions of Mr. Harvey's testimony that are inconsistent with Mr. Harvey's statement to the police. He also urges the court to reweigh the proof consistent with his position that Mr. Harvey, alone, possessed the cocaine found in the bathroom with the intent to sell or deliver. Similarly, Defendant

contends that portions of David Brown's statement accusing him of selling crack cocaine out of his apartment should have been discounted because David Brown was not in his "right mind" at the time he made his statement. Defendant also points out that surveillance of David Brown's apartment two days before the raid did not generate any proof of his engagement of any illegal activity much less a drug transaction. We decline to reweigh the proof in our analysis. We conclude a rational juror could infer that Defendant had the power and intention to exercise dominion and control over the cocaine found in the bathroom and possessed it with the intent to sell it out of David Brown's apartment. Moreover, Defendant's issue regarding his simple marijuana conviction is waived because he failed to support it with argument.

When a defendant challenges the sufficiency of the evidence, this court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Allison,* 618 S.W.3d 24, 33 (Tenn. 2021); *State v. Gentry,* 538 S.W.3d 413, 420 (Tenn. 2017). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Jones,* 589 S.W.3d 747, 760 (Tenn. 2019). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "all reasonable and legitimate inferences from the evidence must be drawn in favor of the prosecution and all countervailing evidence discarded." *State v. Weems*, 619 S.W.3d 208, 221 (Tenn. 2021). As such, this court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *Id.* (citing *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017)). Questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *Allison,* 618 S.W.3d at 34; *Jones,* 589 S.W.3d at 760. "This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)).

In Tennessee, "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). Possession of a controlled substance may be actual or constructive. *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001)). A person constructively possesses contraband when he has "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Shaw,* 37 S.W.3d at 903 (quoting *State v. Patterson,* 966 S.W.2d 435, 444-45 (Tenn. Crim. App. 1997)). Mere presence in an area where drugs are discovered, or association with a person who is in possession of drugs,

without more, is insufficient to support a finding of constructive possession. Constructive possession rests on the totality of the circumstances of each case and may be proven by circumstantial evidence. T.C.A. § 39-17-419 (possession may be inferred from "relevant facts surrounding the arrest").

Likewise, "intent" may be inferred "from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing." *Id*. § 39-17-419. Such "other relevant facts" that can give rise to an inference of intent to sell or deliver include the weight and street value of the drugs, the packaging of the drugs, the presence of a large amount of cash, and the presence of weapons. *See State v. Nelson,* 275 S.W.3d 851, 867 (Tenn. Crim. App. 2008) (sufficient circumstances from which the jury could reasonably infer that the defendant intended to sell the cocaine where defendant was spotted in a location known for illegal drug sales, in possession of cocaine inconsistent with personal use, coupled with $114 in cash and a check for an unspecified amount); *State v. Logan,* 973 S.W.2d 279, 281 (Tenn. Crim. App. 1998) (a large amount of cash found in conjunction with several small bags of cocaine provided sufficient evidence of intent to sell); *State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995) (the absence of drug paraphernalia and the manner of packaging of drugs supported an inference of intent to sell); *State v. Matthews*, 805 S.W.2d 776, 782 (Tenn. Crim. App. 1990) (finding testimony of amount and street value of 30.5 grams of cocaine was admissible to infer an intention to distribute).

Defendant argues that the State failed to establish that he, rather than Mr. Harvey, possessed the cocaine found in the bathroom and that, like the gun charge, he should not have been charged and convicted. Viewing the proof in the light most favorable to the State and discarding all countervailing proof, the evidence shows Defendant exploited David Brown's addiction to cocaine and used David Brown's apartment as a "trap house" to sell cocaine in order to avoid the detection of law enforcement. Knowing David Brown's addiction, Defendant "paid" him with cocaine for working at his car wash and left cocaine and marijuana for using his apartment. When David Brown asked him not to sell cocaine out of his apartment, Defendant physically assaulted David Brown. "Threatened" and "intimidated," David Brown declined to involve the police and chose instead to remain in his bedroom or stay out of his own home while Defendant and Mr. Harvey were there.

Furthermore, Defendant had a set of keys to enter the apartment and was observed entering and exiting David Brown's apartment several times as if it were his own home. There was constant foot and vehicle traffic to the apartment while Defendant was inside. Mr. Harvey and Mr. Johnson corroborated David Brown's statement that Defendant was selling narcotics out of David Brown's apartment. Mr. Harvey testified that he had been regularly buying crack from Defendant at David Brown's apartment and had bought

- 14 -

cocaine the day the warrant was executed. He and David Brown saw Defendant sell crack to "Pam" on the same day. Mr. Johnson saw five people come to the apartment and go directly to the bathroom where 21.75 grams of cocaine was later found. By their verdict, the jury accredited Mr. Harvey's testimony that he and Defendant ran into the bathroom when the police began their raid. The jury likewise accredited David Brown's statement that Defendant promised to post Mr. Harvey's bond if he claimed ownership of the cocaine and gun.

The proof established that Defendant possessed the power and intent to exercise dominion and control over David Brown, David Brown's apartment, and the drugs found in David Brown's apartment, namely, the crack cocaine found in the floor of the bathroom when the police executed the search warrant. Moreover, the jury was free to infer from the amount of cocaine, the presence of two digital scales, the large amount of cash on Defendant, and a gun hidden in the toilet tank near the bag of crack cocaine, that defendant possessed the intent to sell cocaine.

Lastly, Defendant's issue regarding the sufficiency of his marijuana possession conviction is waived because he has provided no argument or citations in support of this issue. Generally, "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b); *see also* Tenn. R. App. P. 27(a)(7). Accordingly, it is waived. Waiver notwithstanding, from this proof, we conclude a rational juror could infer that Defendant had the power and intention to exercise dominion and control over marijuana found in the living room when the police raided the apartment. Defendant was within reach of the marijuana and able to exercise dominion and control of it. The proof is therefore sufficient to support Defendant's conviction for simple possession of marijuana. Defendant is not entitled to relief.

## Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
JILL BARTEE AYERS, JUDGE

- 15 -